W. C. CONNOR ET AL. V. T. H. SAUNDERS.

No. 6796.

1. **Venue—Trespass.**—An employe was injured by the want of perfect machinery which he was using in his work, or by the want of care of one in control of the work. *Held,* such injury is not the effect of a *trespass* as the word is used in section 8, article 1198, Revised Statutes, and the parties liable from such negligence could plead their privilege to be sued in the county of their residence.

2. **Pleading.**—Where the pleader states the facts upon which he claims relief the effect of such facts will not be changed by allegations as to their legal effect.

3. **Case Adhered to.**—Ricker, Lee & Co. v. Shoemaker, ante, page 22, adhered to.

APPEAL from Grayson. Tried below before Hon. H. O. Head. The opinion states the case.

*W. B. & G. G. Wright,* for appellants.—The court erred in not sustaining the plea in abatement and dismissing the cause from the docket. The sworn plea in abatement and the statements in the petition of appellee show that the suit should have been instituted either in Tarrant County or Dallas County, Texas. Rev. Stats., art. 1198; Robertson v. Ephraim, 18 Texas, 118; Russell v. Railway, 68 Texas, 646; Graham v. McCarty & Brown, 69 Texas, 323; Watson v. Baker, 67 Texas, 48; Railway v. Mangum, 68 Texas, 342.

*C. B. Randell* and *W. W. Wilkins,* for appellee.—1. The act complained of was a trespass within the meaning of article 1198, subdivision 4, Revised Statutes, and suit for the consequent injury was main-

tainable in Grayson County, where the cause of action arose.    Rev. Stats., art. 1198, subdiv. 4; Bartee v. Railway, 36 Texas, 648; Railway v. Graves, 50 Texas, 181; Cook v. Horstman, Ct. App. C. C., sec. 770; 3 Blacks. Com., 208; Bouv. Law Dic., title Trespass, p. 608.

2. It having been alleged in appellee's petition that the acts complained of by him and which caused his injuries were fraudulently and intentionally committed by appellants, and this allegation not having been denied under oath by appellants, the District Court of Grayson County had jurisdiction to try the case.   Watson v. Baker, 67 Texas, 48.

MARR, JUDGE, *Section A.*—In our estimate of the record the determination of the question presented by the first and second assignments of error will be decisive of this appeal.    They present the question whether or not the defendants were subject to be sued in the county of Grayson without their consent.

On the 31st day of December, 1887, appellee T. H. Saunders brought his suit in the District Court of Grayson County against appellants W. C. Connor, T. J. Oliver, and F. O. Brown, for damages for personal injuries sustained by him while in their employment, engaged in constructing a system of waterworks in and for the city of Sherman in the county of Grayson.

Appellee alleged in his petition that he resided in the county of Grayson, and that appellants W. C. Connor and T. J. Oliver resided in the county of Dallas, and that appellant F. O. Brown resided in the county of Tarrant; that he had sustained actual damages to the amount of $30,000, and vindictive damages to the amount of $20,000, in consequence of defective machinery in letting down pump pipe and insufficient help or labor to perform the duties required of appellee.

On March 9, 1888, appellants filed a plea under oath in abatement and to the jurisdiction of the court.

1. Abatement of the suit on account of claiming their statutory privilege of being sued in the county of their residence, as alleged in appellee's petition, and exceptions for the same cause.

2. Abatement of the suit on account of a pending suit in the District Court of Tarrant County, in the State of Texas, instituted by appellee for the same cause of action against the same defendants (these appellants), and which suit was pending at the time that this suit was instituted and pleaded to by these appellants, and still pending at the date of the trial of this cause.

They also denied under oath the allegations made by the plaintiff of a partnership between one of the appellants, F. O. Brown, and the other appellants, Oliver and Connor.   It was claimed by the defendants that Brown was only an employe of Oliver and Connor and a fellow servant of the plaintiff.   The court overruled the plea in abatement and the special exception of the defendants claiming their privilege

under the law to be sued in the county of their residences. None of the defendants resided in Grayson County, and this appears from the petition as well as the proof. The plaintiff filed no exceptions to the form of the plea in abatement. The court below doubtless sustained its jurisdiction upon the hypothesis that the action is for a "trespass" within the purview of the eighth paragraph of article 1198 of the Revised Statutes, which permits the suit to be brought in the county in which the "crime," "offense," or "trespass" was committed. The cause was tried with a jury and resulted in a verdict and judgment for $5000 actual damages against all three of the appellants, from which they appealed. In order to determine whether the averments of the petition show the commission of such a "trespass" upon him as would under the law confer jurisdiction upon the court below, it is necessary that we shall state more fully the allegations, disclosing the manner in which the injury was inflicted upon him, than we have already done. According to the petition plaintiff was injured while assisting "in putting pump pipe" into a certain well to be a part of a system of waterworks which appellants "were constructing and putting in operation" in the city of Sherman. He sought to recover upon two grounds, viz.: first, on account of defective machinery with which the work was being done at the time he was injured, to which we have already adverted; second, on account of the negligence of F. O. Brown, whom plaintiff alleges was either a member of the partnership or association existing between Oliver and Connor, or was their superintendent and manager in the matter, and therefore not a fellow servant of the plaintiff.

The following are the allegations of the petition which particularly disclose how and under what circumstances the plaintiff received the injuries, viz.: "That plaintiff and said F. O. Brown were doing said work, the said Brown being at the top of said well, directing the progress of said pump pipe into the well and attending to said rope, which was fastened about the middle of said pump pipe, and plaintiff being at one end of the windlass and working the same by means of said crank, which he held in his hands; that when said pump pipe had been lowered about half of its length into said well, and that part of it to which the rope was attached had reached about the mouth of said well, the said F. O. Brown, *without any warning* or admonition to plaintiff, loosened the hold of said rope on said pump pipe, OR *said rope was* IMPROPERLY TIED *to said pipe and gave way,* so as to allow said pump pipe to rapidly and with great force descend into said well until the set collar, attached to and being upon the upper end of said pump pipe, reached the end of the rope attached to the said pump pipe, and suddenly stopped the further descent of said pump pipe; that the descent of said pump pipe and the stopping of it when the said rope reached the said set collar as aforesaid wrenched the crank of the said windlass from the plaintiff's grasp, and the said windlass revolved with

great force and rapidity, and thereby caused the said crank to strike the plaintiff with great force and violence on the face and hand," etc. The petition then proceeds with a detailed account of the extent of the injuries thus inflicted upon the plaintiff, and fixes the amount of damages claimed by him.  But it is contended by the appellee that the petition shows that the injuries were inflicted by the defendants "intentionally, willfully, and *fraudulently.*"  None of the defendants were present when the plaintiff was injured except F. O. Brown.

The extract from the petition inserted above, and which gives the circumstances of the transaction, does not in our opinion sustain this contention of appellee, but on the contrary indicates that the injury resulted either from defective machinery or from the negligence of Brown in not performing some duty incumbent upon him.  It is doubtless the concluding portion of the petition upon which the appellee's counsel rely.  It is there alleged in substance that the injuries "were caused without any fault of his, but by the intentional, willful, and wicked acts and gross and criminal negligence" of said association and said F. O. Brown *in not providing* the structure used with a ratchet wheel, as aforesaid," etc., "and *in the loosening* OR *giving way* of said rope *at the time and in the manner aforesaid,* and that said F. O. Brown *fraudulently* and intentionally put plaintiff to work with and in and about instrumentalities known to them to be dangerous."  We are of the opinion that none of these averments are tantamount to allegations that the defendants intentionally or willfully inflicted the injuries upon the plaintiff.  While these words are employed, still the real state of the case from which they are drawn and the facts upon which the pleader predicates the conclusions are also set forth, and therefore it becomes a question of law for the court to determine the character of the acts or omissions complained of.  The facts occurring at the time of the injury being given in detail, their force and effect are determined by the law, not by the legal conclusions of the pleader.  We are of the opinion that the allegations of the petition, taken as true, show that the plaintiff was injured either on account of the negligence of the defendant company in not providing suitable machinery or appliances, etc., or on account of the negligent omission of Brown to perform some duty, as specified in the petition, incumbent upon him.  It is to be observed that the specific charge against Brown is in the alternative.  It is not positively alleged that he "loosened the hold of the rope," nor that the mere "loosening" of the rope was wrongful. It became so only because he gave no warning.  The effect of the allegation is that he "loosened the hold of the rope, or it was improperly tied to the pipe."  The petition does not inform us, therefore, whether Brown did any direct act at the time leading to the injury.

We regard the allegations here made relating to the conduct of Brown as constituting in law no more than negligent omissions to properly

perform his duties toward the plaintiff, and therefore of the same character as the acts or omissions of the other defendants which we have already determined. The question therefore is, Does such negligence upon the part of the defendants as alleged in the petition and above indicated amount to a "trespass" under article 1198 of the Revised Statutes? We think that the question should be answered in the negative. To constitute a "trespass" as here used something more than mere negligence must be shown. Railway v. Mangum, 68 Texas, 345. The act must be committed willfully or the injury inflicted intentionally, though of course the intent to injure may be presumed from the inflicting of the injury by a wrongful "act committed," as contradistinguished from an act carelessly done or omitted to be done. The act committed must be illegal, though it need not amount to a crime or an offense, for these words are also used in the statute and embrace final acts for which an action for damages may be allowed. Nor need the intent to injure be directed toward the plaintiff. If A in attempting to assault B strikes C, that would be a trespass upon C.

But we deem it entirely superfluous to enter upon an extended discussion of the subject in view of the recent decision of our Supreme Court in Ricker, Lee & Co. v. Shoemaker, ante, page 22, which limits the previous opinion of the court in the case of Hill v. Kimball, 76 Texas, 210, to the precise question then determined. As the point at issue in the present controversy clearly falls within the principles of law announced in Ricker, Lee & Co. v. Shoemaker, supra, we regard that case as decisive of the question, and rest our decision upon it.

We conclude, therefore, that the court below erred in overruling the special exception of the defendants and their plea in abatement to the jurisdiction of the court, and that for this reason the judgment of the District Court should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted October 13, 1891.